### THE AURORA.

### THE LEONARD J. BUSBY.

(Circuit Court of Appeals. Second Circuit. May 14, 1919.)

Nos. 228, 229.

COLLISION ⬤⟹66—VESSELS IN TOW—EVIDENCE.
    Evidence *held* to show, contrary to finding below, that a tug failed to control her long tow, which swung with the tide into collision with libelant's tow, which was in its proper place near Staten Island shore.

Appeals from the District Court of the United States for the Eastern District of New York.

Libels by the Wright & Cobb Lighterage Company against the steam tug Aurora, her engines, etc., the Lehigh Valley Transportation Company, claimant, and by Owen J. McWilliams and others against the steam tug Leonard J. Busby, her engines, etc., the Wright & Cobb Lighterage Company, claimant, in which the steam tug Aurora and the Lehigh Valley Transportation Company, claimant, were impleaded. From an adverse decree, the Wright & Cobb Lighterage Company appeals. Reversed.

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Foley & Martin, of New York City (James A. Martin and George V. A. McCloskey, both of New York City, of counsel), for appellant.

Harrington, Bigham & Englar, of New York City (T. Catesby Jones, and Anthony V. Lynch, Jr., both of New York City, of counsel), for appellees.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. Wright & Cobb Lighterage Company appeals from decrees entered in these proceedings.

On April 1, 1917, at 2 a. m., in the Kill von Kull, a collision occurred between the barge Blue Coat, the port boat in the fifth or last tier of the Aurora's tow, bound west with the flood tide, and the lighter Prince. The lighter was the outside boat of two, towed stern first, on the port side of the tug Leonard J. Busby. The Busby had the derrick lighter Luna on her starboard side and was navigating east against the tide. Both the Prince and the C. G. Mueller of the Aurora's tow were damaged. The owners (the libelants) libeled the Aurora, and a decree has been entered dismissing the libel. Owen J. McWilliams et al., owners of the Blue Coat, libeled the Busby, and the Wright & Cobb Lighterage Company, claimant, interpleaded the Aurora. Its petition has been dismissed, and the Busby has been held solely at fault.

The Aurora had 19 boats, all light, arranged in four tiers of 4 boats each; and a fifth tier of 3, towed on hawsers about 30 fathoms long. These hawsers ran from the stern boats to the outside corners of the outside boats of the tiers. The boats in the tow were about 100 feet long, and the entire tow was about 600 feet in length, all on hawsers 180 feet long. The tug was about 120 feet long, therefore making a total length of about 800 to 900 feet. The Aurora navigated without a helper tug, expecting to meet one at the Baltimore & Ohio Railroad bridge. The Busby was making her way from Pier 7, N. R., to Port Ivory. She left the red and black buoy on her port hand, and when 400 feet west of Livingston Point she saw the Aurora's red and green lights and showed both her own. The captain of the Aurora testified before the local inspectors that he saw a red light and towing lights, although he testified on the trial that he first saw both the Busby's side lights. Apparently he did not see her until he was fairly close, and until she was well on his port and toward Staten Island. The Aurora's lookout, who was on the bow deck, first saw the red light of the Busby.

The captain of the Busby testified that he kept going closer to Staten Island, and thus shut out the green light of the Aurora. She kept her course without change until abreast, when she hard-a-ported. When the Busby first sighted the Aurora, she was about 2,000 feet east of Livingston Point, and some 2,000 feet away from the Aurora. The Busby blew one whistle, ported her wheel, and received no answer. She then blew another whistle three seconds later and slowed her engine. These whistles were blown about three full seconds apart. At that time the tugs were showing red to red. Not hearing a response to the second signal, the Busby then hard-a-ported and worked under a

slow bell. Under these circumstances, the Busby could not stop altogether, for to do so she would have lost control of her tow, as the outside boat was in the current and the inshore boat in slack water. This would have resulted in her shearing. The Busby did all that could be done under the circumstances in going against the tide, as she was obliged to; she went about 200 feet between the time she blew the first whistle and the time of the collision. She was well over toward the Staten Island shore. The Aurora was going with the tide and more swiftly than the Busby.

The cause of the collision, undoubtedly, was the effect of the tide in swinging the tail of the Aurora's tow toward Staten Island, but this swing could not be increased by her porting the wheel as she passed the Busby. The tow swung so far on the port side that one of the witnesses says he could see the Aurora's stern, and she was shearing a little toward Staten Island—this probably due to her porting the wheel. If the tow was following the shearing tug, the tail of the tow must have swung toward Staten Island, considering the location as given by the Aurora's witnesses of its tow; and considering the space occupied by having four barges abreast, and the fact that the Aurora's tow were light barges, it is quite apparent that the Busby then was several hundred feet off the Staten Island shore and the Aurora crowded her over into this position. The record is clear that the Busby continued to head over to the Staten Island shore, for at the time of the collision the Luna, the lighter on the starboard side of the Busby, was less than 100 feet from the Staten Island shore.

We are satisfied that the collision was due to failure to properly manage the tow of the Aurora. It was improbable that the Busby would have kept in the middle of the flood tide, when she could get slack water by keeping close to the Staten Island shore. The fault may well be predicated upon the Aurora alone, with such a long tow in tide waters in an uncontrollable state. She was obliged to keep her tow in line, and if she had not sufficient power to do this alone, it was incumbent upon her to employ helpers. The Busby went as close to the Staten Island shore as safety would permit, and we are of the opinion that she should be exonerated from fault.

The decree will therefore be reversed.