## THE MARION J.

## THE WILLIAM G. HOWARD.

## F. JACOBUS TRANSP. CO. v. GOODWIN-GALLAGHER SAND & GRAVEL CORPORATION et al.

District Court, S. D. New York.
Aug. 1, 1929.

William F. Purdy, of New York City, for libelant.

Macklin, Brown, Lenahan & Speer and Horace L. Cheyney, all of New York City, for Goodwin-Gallagher Sand & Gravel Corporation.

Foley & Martin, of New York City, for the Howard and the Maple Hill.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for Randall & McAllister.

GODDARD, District Judge.

This libel was filed by the F. Jacobus Transportation Company, Inc., as owner of the scow Marion J., against the Goodwin-Gallagher Sand & Gravel Corporation, as owners of the tugs, having in tow the Marion J. and other sand scows, for damages alleged to have been sustained as a result of a collision between the Marion J. and a coal barge in tow of the tug William G. Howard and the William G. Howard has been impleaded as a respondent under the Admiralty Rule 56.

The collision took place in Long Island Sound in the vicinity of Company buoy light off Hewlitt's Point at the entrance to Manhasset Bay at about 11:45 p. m. on December 10, 1926. The Marion J. was the last tier boat on the port side of a flotilla of 24 loaded sand scows in eight tiers of three abreast, which left Hempstead Harbor at 7 p. m. bound for New York. At the time the scows were in tow of three Gallagher-Goodwin tugs, Cockatoo, Goodwin-Gallagher No. 14, and the Reed, on 50 fathom hawsers. The sand scows varied in length from 92 to 116 feet, and the total length of the tow. was about a quarter of a mile, as estimated by respondent's witnesses. The Goodwin-Gallagher tugs were abreast, and the Goodwin-Gallagher No. 14 was in the center.

The tug William G. Howard, with a tandem tow consisting of two loaded coal barges, Indian Ridge and Maple Hill, was bound up the sound for New England ports. The Indian Ridge was on a hawser 75 fathoms long directly astern of the Howard and the Maple Hill was on a hawser of similar length astern of the Indian Ridge. The barges were each 194 feet long; therefore, the total length of the tow, inclusive of the tug, was about 1,350 feet. The barges had no power of their own, except sails which were not set at the time, but did have rudders and a wheel. At the time of the col-

lision there was a man at each wheel. The port forward corner of the Marion J. came in contact with the port side of the Maple Hill 12 to 15 feet from the stern. The collision parted both scow and barge from their respective tows. The Marion J. sustained some damage, but the Maple Hill with her cargo sank in a little more than five minutes after the collision. The tide had been on the flood for upwards of an hour; there was a light northwest wind.

The Goodwin-Gallagher tow was moving at the rate of between a mile and a half an hour, and the Howard tow was proceeding at about six miles an hour. Both carried the regulation lights. The tugs met in the vicinity of Gangway buoy passing each other port to port with a distance between them variously estimated to have been from 300 to 700 feet. No whistles were exchanged. Both tug boat captains testified that there was apparently no danger or need for exchanging signals. Some few minutes later, the captains of the tugs Howard and Goodwin-Gallagher No. 14 noticed lanterns being waved in the stern boats on their respective barges, indicating that trouble had occurred, and the tugs proceeded to the vicinity to investigate and learned that a collision had occurred between the Marion J. and the Maple Hill. Both were adrift, and the Maple Hill was in a sinking condition. The Howard attempted to tow the Maple Hill to a place of safety, but she sank before such a place could be reached. All parties are substantially in agreement as to the above facts, but the testimony relating to the relative position of the tows and to the nature of the collision is an irreconcilable mass. However, it is fully established by the testimony that when the lights of the sand tow first come into the view of the Howard, that the sand tow was off the starboard bow of the Howard between Sands Point and Execution Rocks headed in a generally westerly direction, diagonally across the Howard's course, and that at this time the Howard was off Hart's Island; that eventually the sand tow passed across the bow of the Howard and then hauled further to the southwest to pass between Hart's Island and Gangway buoy. It also appears from the testimony that when the tugs met, the tugs were proceeding approximately on parallel courses. I am also convinced from the testimony and from physical conditions that at flood tide, there is in the vicinity of the Gangway buoy a set of the tide up into Manhasset Bay, which would have the effect of causing the very slow moving scows to sag toward Gangway buoy and in the direction of the Howard tow, and that this sagging was probably accentuated by the fact that the tugs of the sand tow had not completed the turn of their tow and gotten the barges fully into line when the tugs passed each other. That such sagging did occur is not only testified to by the master of the Maple Hill, but it is also clearly indicated by the testimony of Duncan, the captain of the Howard, who testified that when the Howard passed the tugs of the sand tow, the tugs were 600 feet apart, and that when the Howard was passing the tail scow of the sand tow, the distance between his tug and the scow was 300 feet, and by the testimony of Radley, the master of the Indian Ridge, that when his barge was passing the Marion J. there was only 100 feet distance between them. Thus was presented a situation which was likely to and did result in a collision between the tows. Yet neither tug made any move to prevent it. In fact, those in charge were entirely ignorant of the situation because they themselves had neither watched the boats in their tows, nor maintained proper lookouts to observe and report conditions. Therefore, it seems to me that both were at fault. First, for their failure to know and to take into consideration the set of the tide and the currents. Charles Warner Co. v. The Gulftrade, 278 U. S. 85, 49 S. Ct. 45, 73 L. Ed. 195; The Allegheny (C. C. A.) 252 F. 6. And secondly, for their failure to maintain proper lookouts, so that they might be informed of the situation and act accordingly. Both had room to give way to the starboard, if necessary, and, although counsel for the Howard urges certain testimony in support of his contention that the Howard was as close to the Gangway buoy as it was safe for him to proceed with barges drawing 10 feet of water, I accept the statement of Duncan, the master of the Howard, which was very definite and who should know, that he laid his course directly from Stepping Stones light to Execution light, and that there was no change in it until the collision; and if this be true, and allowing for the set of the tide which the captain of the Howard said would affect him less than it would the slower sand tow, a reference to the chart shows that his course was upwards of 350 yards away from Gangway buoy which gave him ample room.

█ It is the duty of the tug to observe and properly protect boats in the tail end of her tow as well as boats in the forward end and to urge proper caution to see that those in the tail end are not injured or endanger

others. Naturally, the longer the tow and the more unwieldy, the greater is the care required, and, as Judge Putnam said in The Gladiator (C. C. A.) 79 F. 445, at page 446: "While * * * we cannot condemn a tow of the character of that in this case as absolutely unlawful, yet we must hold tugs which navigate this coast with such long and essentially hazardous fleets to the use of the extremest care in the interests of common safety." The Wrestler (C. C. A.) 232 F. 448; The Mount Hope (C. C. A.) 84 F. 910; The Allegheny (C. C. A.) 252 F. 6; The Aurora (C. C. A.) 258 F. 439; The Fred B. Dalzell, Jr. (C. C. A.) 1 F.(2d) 259.

Accordingly, it is a case of half damages, and the libelant is entitled to enter a decree against the Goodwin-Gallagher Sand & Gravel Corporation and the steamtug William G. Howard.