## THE VARANGER.

### WESTFAL-LARSEN & CO. v. BALTIMORE & CAROLINA LINE, Inc.

#### No. 3164.

Circuit Court of Appeals, Fourth Circuit.

June 17, 1931.

starboard side of the Dora Weems at the break of the forecastle came in contact with the port side of the Varanger abreast of her funnel aft of amidships, causing substantial damage to both.

A libel was filed in the District Court by the owners of the Varanger against the Dora Weems and a cross-libel by her owners against the Varanger. The details of the accident are fully set out in the careful and exhaustive opinion of the District Judge reported at 45 F.(2d) 608. He reached the conclusion, which finds support in the testimony, that it was unsafe for an overtaking vessel to attempt to pass a vessel at this point in the river; that the pilot of the Varanger, as he expressly testified, knew that the passing was dangerous, and that the pilot of the Dora Weems, who did not testify, was chargeable with like information. The Varanger's pilot offered as an excuse for his own conduct that he was forced to permit the passing because the Dora Weems gave him no opportunity to do otherwise, being right at his stern when she blew to pass. But the District Judge properly rejected this theory as contrary to the weight of testimony. Consequently he held both vessels at fault and entered a decree for divided damages. No appeal was taken by the owner of the Dora Weems, but the owner of the Varanger appealed, and the substantial question in the case is whether the navigators of the Varanger are chargeable with any liability for the collision.

W. Ainsworth Parker, of Baltimore, Md. (Brune, Parker, Carey & Gans, of Baltimore, Md., on the brief), for appellant.

J. Harvey Turnure, of New York City (Kirlin, Campbell, Hickox, Keating & McGrann, of New York City, Janney, Ober & Williams, of Baltimore, Md., and Ira A. Campbell, of New York City, on the brief), for appellee.

Before NORTHCOTT and SOPER, Circuit Judges, and ERNEST F. COCHRAN, District Judge.

SOPER, Circuit Judge.

A collision took place on August 23, 1927, in the Neches river near the city of Beaumount, Tex., between the Norwegian steamship Varanger and the American steamship Dora Weems, as both vessels were proceeding down stream to the Gulf of Mexico. The river at this point is a narrow tortuous stream; and the collision took place when the Dora Weems overtook and attempted to pass the Varanger. Before attempting to pass, the Dora Weems sounded a passing signal of two blasts, indicating her desire to pass on the left or port side of the vessel ahead, and the Varanger on her part answered with two blasts of the whistle signifying her assent to the maneuver. In passing, the

■ Basing our conclusion upon the fact that the passing of the vessel at the point of collision was necessarily attended by danger, we think that this decree was correct. The Navigation Rules for Western Rivers (33 USCA §§ 301–351) provide, amongst other things, that every vessel overtaking any other vessel shall keep out of the way of the last-mentioned vessel (Rule 22 [33 USCA § 347]); and that where, by Rule 22, one of two vessels shall keep out of the way, the other shall keep her course, subject to the qualification of Rule 24 (33 USCA § 349) that due regard must be had to all dangers of navigation and to any special circumstances which may exist in any particular case rendering a departure necessary in order to avoid immediate danger. Pilot Rule VIII for Western Rivers, established by the Board of United States Supervising Inspectors, Steamboat Inspection Service under the authority of R. S. § 4412 (46 USCA § 381), is particularly applicable to the case at bar. It provides:

"VIII. When a steamer is overtaking another steamer, and the overtaking steamer shall desire to pass on the right or starboard side of the steamer ahead, the overtaking steamer shall give one short blast of the whistle, and if the steamer ahead answers with one blast, the overtaking steamer may pass on the starboard side of the steamer ahead; or if the overtaking steamer shall desire to pass on the left or port side of the steamer ahead, she shall give two short blasts of the whistle, and if the steamer ahead answers with two blasts the overtaking steamer may pass on the port side of the steamer ahead; or if the steamer ahead does not think it safe for the overtaking steamer to attempt to pass at that point, she shall immediately signify the same by giving not less than four short and rapid blasts of the whistle, and under no circumstances shall the overtaking steamer attempt to pass the steamer ahead until such time as they have reached a point where it can be safely done, when the steamer ahead shall signify her willingness by blowing one blast of the whistle for the overtaking steamer to pass on the starboard side of the steamer ahead, or two blasts of the whistle for the overtaking steamer to pass on the port side of the steamer ahead.

"Every steamer overtaking another shall keep out of the way of the overtaken steamer. * * *"

This rule has the same force and effect as a statutory rule of navigation; and it has been held by numerous decisions that a vessel which violates such a rule, if she would escape liability for a disaster which follows, must not only show that her fault did not contribute to the calamity, but could not have done so. Belden v. Chase, 150 U. S. 674, 698, 699, 14 S. Ct. 264, 37 L. Ed. 1218; The City of Baltimore (C. C. A.) 282 F. 490. By the express provisions of Rule VIII, it became the duty of the Varanger, if she did not think it safe for the Dora Weems to attempt to pass at the point of collision, to signify the same immediately by giving not less than four short and rapid blasts of the whistle. Having failed to carry out this duty, but, on the contrary, having given express assent to the passing, it is incumbent upon her to show that the Dora Weems would have passed and the collision would have occurred even if danger signals had been sounded. The Varanger cannot meet this burden, for it is quite impossible to conclude that the Dora Weems in any event would have gone ahead, especially in view of the testimony of her navigators that, had alarm signals been sounded, she could have stopped and remained astern.

It is, however, argued on behalf of the Varanger that under the decision of the United States Supreme Court in Warner Co. v. Pier Co., 278 U. S. 85, 49 S. Ct. 45, 73 L. Ed. 195, an overtaken vessel assumes no responsibility for the safe passage of a vessel coming up from behind by giving assent to the passage, except to do nothing to thwart the maneuver, unless the former vessel knows of some circumstances not open to the observation of the latter which would prevent her from going safely by if prudently navigated. In that case the steamship Gulftrade, overtaking the tug Taurus with two scows in tow in the Schuylkill river, attempted to pass the tug and tow after an exchange of signals assenting to the passage. It was possible for the passage to take place safely, but the set of the tide swung the tail of the tow more or less athwart the channel, and the navigator of the ship inaccurately assumed that it would be out of the way in time. By reason of his miscalculation, the collision took place. The Supreme Court said (page 89 of 278 U. S., 49 S. Ct. 45): "We cannot conclude that the Taurus was in fault. She was prudently navigated in plain view of the Gulftrade who knew the relevant facts; and by assenting that the latter might pass she certainly did not assume responsibility for the maneuver. At most the Taurus obligated herself to hold her course and speed so far as practicable, to do nothing to thwart the overtaking vessel, and she knew of no circumstances not open to the observation of the Gulftrade which would prevent the latter from going safely by, if prudently navigated. Of course, no ship must ever lead another into a trap. There was ample room for the Gulftrade to pass. But, if not, she should have slowed down and kept at a safe distance. Her fault was the direct and sole cause of the collision."

The outstanding circumstance which distinguishes this case is that there was ample room for the overtaking vessel to pass, as both vessels knew. Hence it was pertinent for the court to observe that the tug did her full duty when she held her course and speed and did nothing to thwart the overtaking vessel, since the tug knew of no danger which was hidden from the steamer. But this is far from saying that when a leading vessel thinks that the passage is dangerous, she may escape all liability for assenting to a passing, providing only that the overtaking

vessel has like information. To so hold would be in effect to repeal and nullify the positive provisions of the rule that the leading vessel must refuse her assent if she does not think it safe for the overtaking vessel to attempt to pass. The mandate of the rule is clear, and it is our duty to give it full effect. When the overtaken vessel, believing that the maneuver is dangerous, nevertheless assents to it, she becomes a participant and is at least jointly liable for a subsequent disaster unless she can show that her assent could not possibly have contributed to the result. See The City of Baltimore (C. C. A.) 282 F. 490.

The decree of the District Court will be affirmed.