## DE LUCA v. ATLANTIC REFINING CO.
### No. 19, Docket 20998.

United States Court of Appeals
Second Circuit.

Argued June 6, 1949.

Decided July 18, 1949.

Geo. K. Hourwich, New York City, for appellant.

Chadbourne, Wallace, Parke & Whiteside, New York City, Leonard P. Moore, New York City (Edward R. Neaher, New York City, of counsel), for appellee.

Before L. HAND, Chief Judge, and CLARK and FRANK, Circuit Judges

L. HAND, Chief Judge.

The plaintiff appeals (1) from a judgment summarily dismissing his complaint in an action to recover damages for injuries done by the defendant to his real estate in the State of Pennsylvania; and (2) from an order denying him leave to amend the complaint. The plaintiff is a citizen of New York, the defendant is a Pennsylvania corporation, and the jurisdiction of the district court depends upon diverse citizenship. The litigation has had a long history, and, as the defence is the Statute of Limitations, it will be necessary to state the earlier proceedings in a little detail. The plaintiff

owned a plot of land in Pittsburgh which abutted upon land which the defendant owned and used as a gasoline station and for storage tanks. Beginning in January, 1936, the occupants of the plaintiff's land, which he asserts was worth $39,000, began to suffer from the leakage and smell from the storage tanks. There was a mortgage of $10,000 on the land, which fell due in the spring of 1937; the mortgagee threatened foreclosure, and under the coercion of this threat the plaintiff was forced to convey on July 7, 1937, to a buyer named by the mortgagee at the price of $14,000, the smallness of which was caused by the defendant's tort. The plaintiff sued the defendant for this loss in January, 1938, in the Court of Common Pleas at Pittsburgh, and the action came to trial in September, 1941, but the plaintiff's attorney consented to a voluntary non-suit upon the defendant's promise that the case would be "settled." It was not settled, and the plaintiff through other attorneys in December, 1941, brought a second action on the same claim in the federal District Court for the Western District of Pennsylvania. That action came on for trial in May, 1942, resulted in a disagreement, and was set down for retrial; but it was dismissed for lack of prosecution in November, 1944, and the plaintiff never attempted to reopen the judgment. The action at bar was commenced on November 13, 1945, less than a year after the dismissal of the Pennsylvania federal action; and in October, 1946, the defendant answered, pleading the Statute of Limitations. The plaintiff asked leave in the same month to amend his complaint, which was granted; and on November 18th he moved to amend once more, this time setting up two new articles (20 and 21), which we quote in the margin. See 176 F.2d 425. The defendant countered by a motion for judgment summarily dismissing the complaint, which the judge granted, at the same time denying the plaintiff's motion for the second amendment.

▪ The first question is as to the dismissal of the complaint. The claim, being for a negligent injury to real property, was prima facie barred by § 49(6) of the New York Civil Practice Act which sets three years as the limitation for such an action, for the action was begun on November 13, 1945, and upon any theory the injury ended on July 7, 1937, when the plaintiff sold the property. In the district court the plaintiff attempted to toll the bar of § 49(6) by recourse to § 23. His theory was that, since the Pennsylvania federal action had been brought in time under Pennsylvania law, and since he had brought the action at bar within a year after it had been dismissed, the section protected him, by substituting the date of the Pennsylvania action as the date of the action at bar. There are two answers to this argument. First, § 23 does not cover a case when the first action was dismissed "for neglect to prosecute"; and, second, if it ever covers a case where the first action is in the court of another state, it does so only if that action has been brought within the time limited for such an action by the law of New York.[1] Since the Pennsylvania federal action was dismissed for neglect to prosecute it, § 23 could not possibly protect it; and since the Pennsylvania federal action was brought more than three years after July 7, 1937, it was not brought "within the time limited therefor," which means the time limited by the law of New York.

The plaintiff has apparently now abandoned § 23 and relies upon § 19, which he did not invoke at all in the district court. As a preliminary he must, however, avoid § 13, which provides that, if a claim arises in another state whose statute has barred it when the action is begun in New York, it is also barred in New York. In the case at bar that section would be conclusive save for its concluding phrase: "except where the cause of action originally accrued in favor of a resident of this state." The plaintiff argues that this means no more than that the plaintiff must be a resident of New York when he sues; but we need not decide whether that is right, because, even though we should read § 13 in a contrary sense: i. e., to mean that the plaintiff must be a resident of New York when the claim

---

[1] Baker v. Cohn, 266 App.Div. 236, 41 N.Y.S.2d 765.

"accrues," on this record the section would not be a bar. The plaintiff in his affidavit alleges that he was a resident of New York when the claim arose and that he has always been so; and that is not an issue of which we could dispose without a trial. Therefore, arguendo, we will assume that § 13 does not bar the action.

█ There remains the question whether § 19 tolls the bar of § 49(6), because the defendant is a foreign corporation. We recognize of course that the statute is an affirmative defence, and that in the district court the defendant did not prove that it had been continuously subject to process in this state for three years before November 13, 1945, when the action at bar was begun. If the plaintiff had raised that question below, it would be too late to make the necessary proof upon appeal. Nevertheless, the defendant does proffer us documentary evidence that it has been subject to process in New York since October, 1936: i. e., (1) A copy, certified in such form as to be admissible in the district court, of the defendant's "designation" of October 28, 1936, of the Secretary of State of New York as a person on whom process might be served, and (2) a certificate of the custodian of the Secretary of State's records, that the defendant has never "surrendered the authority" to do business in New York, of which the "designation" was a necessary part. The plaintiff does not suggest that he is prepared to reply to these documents. True, it may be too strong to say that it is impossible to conjure up any conceivable answer to them. The original may have been forged; the authentication may be false; there may be a "surrender of authority" on file which the custodian failed to find. But if a motion for summary judgment is to have any office whatever, it is to put an end to such frivolous possibilities when they are the only answer. Nor are we troubled by the fact that the documents were not offered in the district court,

for the plaintiff is in no position to raise that objection. An appellate court will not as matter of course reverse a judgment upon a point not raised below, entirely disregarding any opportunities which have been open to the appellee to raise it, and the length of time that has passed.[2] The plaintiff did not suggest at any time in the district court that § 19 tolled the statute because the defendant was not subject to process; his brief contained not a syllable to that purport; on the contrary, he assumed that § 49(6) barred the action save for § 23. We will assume, however, that, since he is a layman, his ignorance of his rights should be accepted as an adequate excuse, but it can be so accepted only upon conditions just to the defendant. Naturally enough, the defendant did not put the documents in evidence to prove that it had been subject to process, because the plaintiff did not raise that issue. If he is to raise it now, the defendant must be allowed to show that it would have been a futile issue to raise. It does show that it would have been a futile issue, unless the documents proffered are forgeries, or the certificate is erroneous, and as we have said, the plaintiff does not suggest that either is true, as he would have been obliged to do on motion for summary judgment. For these reasons we hold that § 19 did not toll § 49(6).

█ The plaintiff, both in the district court and here, also asserts that the defendant was "estopped" to plead the statute, because it had secured the discontinuance of the Pennsylvania state action upon the defendant's promise that the claim would be "settled out of court." There is not a shred of corroborative testimony of any such agreement except for a statement attributed to the Pennsylvania state judge in a petition of the plaintiff to "remove" the Pennsylvania federal action to New York, that "this case will be settled out of court, as it ought to be." However, we need not rest upon the insufficiency of the

2 Duignan v. United States, 274 U.S. 195, 200, 47 S.Ct. 566, 71 L.Ed. 996; Charles Warner Co. v. Independent Pier Co., 278 U.S. 85, 91, 49 S.Ct. 45, 73 L.Ed. 195; Burnet v. Commonwealth Improvement Co., 287 U.S. 415, 418, 53 S.Ct. 198, 77 L.Ed. 399; Zellerbach Paper Co. v. Helvering, 293 U.S. 172, 182, 55 S.Ct. 127, 79 L.Ed. 264; United States v. Classic, 313 U.S. 299, 323, 61 S.Ct. 1031, 85 L.Ed. 1368; McCullongh v. Kammerer Corporation, 323 U.S. 327, 65 S.Ct. 297, 89 L.Ed. 273.

evidence; because, even if there were such an agreement, it did not "estop" the defendant, for the plaintiff did not rely upon it. The Pennsylvania state action was dismissed in September, 1941, and he began the Pennsylvania federal action in December, 1941, which concededly was amply in season under the Pennsylvania statute, whether the alleged agreement constituted a new claim, on which to base an alternative recovery, we reserve for the moment; but, as a means of tolling the bar of § 49 (6), plainly it must fail. We hold that the dismissal of the amended complaint was right.

■ We come therefore to the judge's denial of leave to file the second amended complaint of November 18, 1946, which introduced two new claims into the action, set forth in Articles 20 and 21. In October the plaintiff had just sworn to the first amended complaint, in the 18th Article of which he described the event which caused him to sell his property to one, King, for $14,000; and he then attributed the decrease in the value of his property only to the injury done by the filling station; he did not suggest that he was forced to sell because of any "conspiracy" between the defendant and George, who had acted for the mortgagee. Although it is extremely difficult to gather the meaning of the allegations, nevertheless, since we are to read all pleadings with the utmost lenity, we will assume that this pleading sets forth the following facts. The defendant persuaded George to induce the mortgagee to threaten foreclosure and to compel the plaintiff by that means to sell at an inadequate price. This the defendant did to prevent the continued rolling up of damages from its tort; and it in effect suborned George to be disloyal to his principal, the mortgagee, and to act in the defendant's interest. We will further assume that these allegations set up an actionable tort, different from that which the plaintiff had theretofore alleged, but one which he might unite with the claim he had been asserting. In spite of this, and irrespective of any question of

discretion, it was right to deny the amendment; for the wrong, whatever it was, was completed on July 7, 1937, over nine years before the amendment was proposed; and it was therefore barred by § 49(7), because it was an "injury to property," the limitation of any action on which was not otherwise prescribed.[3] Nor was it saved by § 48(5).[4]

So far as we can understand the 21st Article, which is even less coherent than the 20th, its substance is as follows. Connolly, the plaintiff's attorney in the Pennsylvania state action, in confederacy with the defendant, put a witness on the stand who was one of the defendant's employees, and who testified untruthfully. (Since the action was voluntarily dismissed, this is obviously irrelevant.) Connolly abandoned the action and discontinued it without warrant upon the promise of a settlement which was never carried out, and he later refused to intervene to prevent the dismissal of the Pennsylvania federal action. So far as concerns this claim against Connolly personally, we need not pause to analyze it. He is in Pennsylvania, and, although it would have been permissible to join him originally under Rule 20(a), Federal Rules of Civil Procedure, 28 U.S.C.A., certainly it was within the discretion of the judge to refuse to do so, so long after the event, and in view of the improbability that he could be served. The defendant was entitled to a termination of any claims against it without the interpolation of a separate claim against a new defendant. So far as concerns any new claim against the defendant it must be for breach of contract, because we have already disposed of it as an "estoppel." True, it was not barred on November 18, 1946, by the statute of limitations, because six years had not passed since its breach, which may have been as late as December, 1941, when the Pennsylvania federal action was begun. But it was right not to allow it to be interpolated into the action, because it was insufficient in substance, quite independently of any question of the judge's discretionary power to

---

[3] Potter v. Walker, 276 N.Y. 15, 26, 27, 11 N.E.2d 335; Kalmanash v. Smith, 291 N.Y. 142, 159, 51 N.E.2d 681.

[4] Brick v. Cohn-Hall-Marx Co., 276 N. Y. 259, 11 N.E.2d 902, 114 A.L.R. 521.

refuse it. A promise to settle a claim when the terms of settlement have not been agreed to, is at most no more than a promise honestly to seek terms which will be satisfactory to both sides; and the plaintiff docs not allege, either that the defendant did not mean to seek a compromise when the Pennsylvania state action was discontinued, or that it did not honestly try to find a basis for compromise thereafter. But even assuming that the defendant's promise to settle was made in bad faith, the article alleges nothing from which it can be inferred that the plaintiff suffered any damages from the breach. The prosecution of the original claim was renewed within three months; and although the defendant retained new attorneys, he does not allege that he paid them anything, and they may well have accepted a contingent retainer. For the foregoing reasons we hold that the denial of leave to amend was right, as matter of law. Moreover, it would have been right as matter of discretion. Leave was asked five years after the putative breach, during all of which the parties had been in constant litigation. The defendant too had its rights; and to prolong further a litigation, which had shown itself incapable of making any effective progress in three different courts, would have been an abuse of the judge's discretion.

Judgment affirmed.

Note:

"Article 20:

"That at the time the property described in Paragraph No. 4 hereof was sold, as described in Paragraph No. 18 herein, above-named W. D. George was Director in Charge of Mortgage Loans and Mortgage Management for the said Peoples-Pittsburgh Trust Company, mortgagee Bank mentioned herein, at Peoples Bank Building, Pittsburgh, Pennsylvania. That up to and including the day of sale of such property and for many years previous thereto, the said W. D. George was Real Estate and Insurance Agent and in charge of the management of said property herein described upon which the Peoples-Pittsburgh Trust Company had their mortgage of $10,000 and in such capacity said W. D. George was and had been at all times in constant touch with the situation and fully informed as to the Atlantic Refining gasoline injury affecting said property. That upon information and belief at the time and subsequently thereto, the defendant, the Atlantic Refining Company, together with the said W. D. George, as Director for the said Peoples-Pittsburgh Trust Company, mortgagee, in view of the existing and continued gasoline injury upon the property, entered into a conspiracy, whereby, notwithstanding all previous assurances and covenants to the contrary, the said W. D. George induced the said Peoples-Pittsburgh Trust Company to force the sale of the property herein described by plaintiff as indicated in Paragraph No. 18. Upon information and belief for the express purpose of defrauding of his equitable right in the property for the ridiculous price of the mortgage alone and, likewise, in order to toll the accrual of added damages against defendant Atlantic Refining toward plaintiff by reason of the continued nature of the said gasoline injury. That upon information and belief the purported purchaser of the property was not a bona fide buyer, and that, upon information and belief, a large sum of money passed then between the parties and a large sum of money was then also expended upon the property by said purported purchaser, immediately upon his coming into possession, chiefly and ostensibly for the purpose of abatement and correction of said gasoline injury of defendant which still continued, and not for any necessary improvement or repair to the property which was not in need of, being in good repair, then. And that also at the time said purported purchaser boasted to the plaintiff that he had bought the property for a loss because it 'was all fixed.' That in furtherance of such conspiracy sometime in the period between January and May 1941 and subsequently thereto, the said W. D. George further balked and hampered the plaintiff and injured him by denial and refusal to produce evidence and documents which were, and said W. D. George knew to be, in his possession. And that said documents and evidence were necessary and essential toward the prosecution

of the trial against the said Atlantic Refining Company then pending in the Common Pleas Court of Allegheny County.

"Article 21.

"That at sometime in 1941 and for sometime previously thereto, the above named John Wray Connolly, with offices in the Oliver Building, Pittsburgh, Pennsylvania, was engaged by plaintiff as his Attorney and Counselor at Law to represent him in the action against the said Atlantic Refining Company at No. 1385 Common Pleas Court, Allegheny County in Pittsburgh, Pennsylvania. That upon the trial of said action, at sometime in September 1941 no serious difficulty arose and plaintiff would have had a unanimous verdict of the jury for a substantial judgment against the said Atlantic Refining Company. That thereupon during the course of the trial and previously thereto, upon information and belief, the said John Wray Connolly conspired with defendant company Atlantic Refining in order to deprive plaintiff of the benefits of the verdict which was favorably in view for plaintiff, and thereby permitted an official of said Atlantic Refining Company to testify for and in behalf of plaintiff, untruthfully and uncontradicted and against plaintiff's specific objections to that effect. And likewise thereupon, without cause or justification, withdrew the action from trial upon asserting to the Court that the case, by agreement with defendant, would be settled out of court; and that thereafter the said John Wray Connolly abandoned the case and his client and no such settlement was materialized or made possible, and counsel likewise displayed callous indifference to entreaties of his client, to save his case at least from being tolled by Statute of Limitations, then dangerously at hand, and to his duty as a lawyer. That plaintiff was thereby not only irreparably and permanently damaged in the premises, but, in order to actually save his cause from the Statute of Limitations toll, he was further subjected to greater sacrifice in order to engage other counsel to bring the said Action No. 1750 upon the same cause in the District Court of the United States for the Western District of Pennsylvania. That in furtherance of said conspiracy, upon being duly notified by mail and telegraph, that plaintiff's Petition November 2, 1944, to remove the said action was before the said United States District Court in Pittsburgh, and that plaintiff was ill and had no counsel representing him then before said Court, to take such steps even in the nature of an emergency action, in order to protect the plaintiff's interest the said John Wray Connolly flatly and unconditionally refused to take any action whatsoever notwithstanding the fact of plaintiff's interest being further jeopardized thereby. That the plaintiff is a citizen of the State of New York and W. D. George and John Wray Connolly are both citizens of Pennsylvania."