Luis Martínez, Petitioner, *v.* Superior Court of Puerto Rico, San Juan Part, A. M. Umpierre, Judge, Defendant; Félix Mejías, Administrator of Economic Stabilization, Intervener.

No. 2107. Argued December 8, 1955.—Decided June 19, 1956.

*Rodolfo F. Aponte* for petitioner. *Juan T. Peñagarícano* and *Carlos Coll Carpintero* for intervener; *Fiddler, González & Nido* counsel for tenants occupying the building in question.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Petitioner Luis Martínez is the owner of a building located at Stop 8 of Puerta de Tierra. This building is divided into business offices and a warehouse used by several

motion-picture distributing companies, who are the lessees of the premises. In June 1952, Martínez filed before the then Rent Administration of Puerto Rico [1] a petition for an increase in rent. After a hearing in which all the parties intervened, introduced evidence, and were amply heard, the Rent Administrator issued an order on December 5, 1952, increasing the rent by 15 per cent over the basic rent, to take effect on the rental period following the order increasing the rent.[2] The lessees did not challenge the orders of increase, either by requesting a reconsideration before the administrative agency itself or by the writ of review provided in § 27 of Act No. 464. The lessor, however, was not satisfied with the determination of the Administrator and applied for review in the Superior Court, San Juan Part, in civil case No. T. S. 52–4590. The tenants were not made parties to this action, nor were they notified or did they intervene in the proceeding. However, the Rent Administrator appeared in Court to support his orders. After a hearing, the trial court rendered judgment on August 28, 1953, setting aside the orders appealed from and remanding the case to the Economic Stabilization Administrator "that he may proceed to fix the reasonable rent for each of the premises according to his own findings."

Pursuant to the terms of that judgment, the Economic Stabilization Administrator, on October 14, 1953, entered

---

[1] Act No. 97 of June 19, 1953, abolished the Office of Rent Administration and transferred all the functions, powers and duties to the Economic Stabilization Administration to be exercised by the Economic Stabilization Administrator pursuant to the provisions of Act No. 464 of April 25, 1946. (Reasonable Rents Act, Sess. Laws, p. 1326.)

[2] The Rent Administrator made the following findings of fact: that subsequent to October 1, 1942, (1) improvements were made in the building in the amount of $6,995.57; (2) there was an increase in the use of water in the amount of $31.57 monthly; (3) there was an increase of $104.75 monthly in property taxes, and (4) that because of special relations between the landlord and the tenant and because of peculiar circumstances the rent paid on October 1, 1942, was lower than the rent prevailing for similar dwellings. He held, however, that the law only authorized a 15 per cent increase over the basic rent.

new orders to take effect on October 1, 1953, fixing, without the 15 per cent limitation, higher rents than those fixed in the original orders, except in two cases where the rent was decreased. Notice of the new orders was given both to the owner and the lessees. The latter did not challenge the orders or apply for a review. The lessor, however, disagreed with the Administrator's new determination concerning the prospective character he gave to the new orders and the decrease ordered in two cases, and applied for review in the trial court. On petitioner's own motion the lessees of all the premises were summoned and heard in this second review proceeding. After the corresponding hearing, the trial court rendered judgment setting it aside. In order to review this judgment we issued a writ of certiorari on motion of Luis Martínez, the owner or lessor.

In this proceeding the petitioner contends that the trial court erred in setting aside the writ of review (1) because the new orders increasing the rent entered on October 14, 1953, should have taken effect on December 5, 1952, date of issuance of the original orders, and not on October 1, 1953, as provided by the Economic Stabilization Administrator, and (2) because the reduction in rent decreed by the Administrator in cases HC–3283 and HC–3287 did not lie within a proceeding filed by the landlord to increase the rent.

██ Before considering these questions we must point out that the lessees, interveners here, attack in their brief (a) the validity of the judgment rendered by the trial court in the first petition for review filed by petitioner here, as well as the orders of the Administrator based on that judgment, adducing as ground that they were not parties nor were they summoned or heard in that proceeding, and (b) the validity of the second petition for review also filed by the petitioner and which is object of this certiorari, alleging as ground that they were not parties in that proceeding either.

We issued the present writ of certiorari to review the errors that petitioner alleges were committed by the trial court in the judgment sought to be reviewed in this Court. The interveners have not prayed for review of that judgment by certiorari. Therefore, their mission here is merely to support the correctness of the judgment. Although they were not joined as defendants or respondents in the trial court, yet they were summoned and they appeared and were heard in the review proceeding, the validity of which they now challenge in their capacity as interveners and not as petitioners or appellants.

In general, this Court will not consider objections raised against the judgments, decisions or orders of the lower court by a party who has not prayed for review through certiorari. *Mechanics Co.* v. *Culhane,* 299 U. S. 51; *Alexander* v. *Cosden Co.,* 290 U. S. 484; *Lloyd Sabaudo Societa* v. *Elting,* 287 U. S. 329; *Oxford Paper Co.* v. *The Nidarholm,* 282 U. S. 681; *Warner Co.* v. *Pier Co.,* 278 U. S. 85. We have followed a similar principle as to appeals. *Todd* v. *Municipal Assembly,* 39 P.R.R., 6, 130. See also 3 Am. Jur., p. 402, § 865; *Harlan-Wallins Coal Corp.* v. *Jackson,* 233 S. W. 2d 1014. A careful examination of the record herein does not disclose the existence of special circumstances in this case to make it an exception to the rule.[3]

---

[3] We are not impressed by the argument adduced by the interveners to the effect that there has been no due process of law in the proceeding to increase the rent because the parties were not summoned or heard in the first writ of review. Although this is true, when the Economic Stabilization Administrator notified them of the new orders increasing the rent issued in obedience to the judgment entered in said proceeding, the interveners had an opportunity to challenge those orders before the Administrator himself or by a judicial review authorized by law and they failed to do so. In our opinion they consented to those orders. This notwithstanding, in that first proceeding the trial court merely examined the record of the administrative proceedings—*Ledesma, Administrator* v. *District Court,* 73 P.R.R. 379—and without altering any of the findings of fact it concluded that the Administrator had erred on a question of law and remanded the case "that he (the Administrator) may proceed to fix the reasonable rent for each of the premises *according to his own findings.*" (Italics ours.)

██ The first question for decision is that concerning the effective date of the Administrator's orders of October 14, 1953, increasing the rent. The petitioner contends that those orders should take effect on December 5, 1952, which is the date when the original orders increasing the rent were issued, and not on October 1, 1953, as ordered by the Administrator and affirmed by the trial court.[4] In support of his contention petitioner invokes § 8 of the Procedural Regulation approved by the former Rent Administrator, and the general principles of the restitution doctrine.

The Regulation establishes the procedure for the adminis-

---

"Due process requirements are satisfied if at any time before governmental action becomes final hearings are allowed either by administrative or by judicial action." Davis, *The Requirement of Opportunity to be Heard in the Admn. Process*, 51 Yale L. J. 1093, 1136; *Bourjois Inc.* v. *Chapman*, 301 U. S. 183; *Southern Ry. Co.* v. *Virginia*, 290 U. S. 190. We have seen that the tenants were granted an administrative hearing in the instant case. On the other hand, § 7 of the Reasonable Rents Act (17 L.P.R.A. § 187) grants to the *party prejudiced* by any rule, regulation, order or determination of the Administrator, the right to ask for its judicial review. The law, however, is silent as to who shall be the defendant or respondent or who shall be summoned and heard in the writ of review before the courts. Review of administrative proceedings is a purely statutory right, Gellhorn, *Administrative Law, Cases and Comments* 1940, p. 791, although the review of specific questions is proper even in the absence of legal provisions granting the relief. *Universal Camera Corp.* v. *N.L.R.B.*, 340 U. S. 474. See also 42 Am. Jur. 558. Our Legislature in the lawful exercise of its police power declared, upon approving the Reasonable Rents Act, that the lease of buildings for business purposes is invested with public interest and that the purpose of that law was to protect the right of tenants. Statement of Motives of the Reasonable Rents Act, 17 L.P.R.A. § 181. In view of that, it is highly improbable that when a landlord asks for judicial review of an order or determination of the Administrator, the interests of the tenants are not adequately protected through the representation of the Administrator who appears in court to support his action. In any event the failure to notify the interveners here in the first review proceeding did not deprive the trial court of jurisdiction to entertain that proceeding if we bear in mind that such requirement is not imperative by provision of law. However, the best practice is that once the petition for review is filed the court should summon the parties who intervened in the administrative proceeding so that they may appear in that proceeding if they so desire.

[4] The petitioner indicates in his brief that from December 5, 1952 to October 1, 1953, he has suffered a reduction of $5,669.50 for rentals which he has failed to receive.

trative review of the Administrator's orders. Its § 8, par. (*f*) provides that the order entered in a review proceeding shall be retroactive to the date of the order which is reviewed, except in those cases where, subsequent to that date, there may arise factors requiring a determination other than the one set forth in the order reviewed.[5] The interveners argue that the provision of paragraph (*f*) concerning retroactivity is void because it is contrary to Act No. 464. The Administrator, in turn, contends that that provision applies retroactively only to refunds contemplated by the law, which are always in favor of the tenant.[6] However, we fail to see the necessity of considering the validity and scope of such provision. In the first place, this is not the case of orders entered by the Administrator in an administrative review proceeding, in which case par. (*f*) of § 8 of the Rent Procedural Regulation would be applicable. In the second place, we are not concerned here with a rent adjustment order which by provision of law has retroactive effect with the inherent right of the tenant to reimbursement of anything he pays in excess. See footnote 6. There is nothing in Act No. 464 which might help us to decide the question in issue. Ultimately, the point is to determine whether by virtue of any doctrine at law or in equity, the orders of October 14, 1953, should be considered as sub-

---

[5] Paragraph (*f*) of § 8 of the Rent Procedural Regulation reads:

"*f*. The Administrator may ratify, revoke or modify, in whole or in part, the former order and he may also enter all other orders as he may deem necessary in the case. The order entered in a review proceeding shall be retroactive to the date of the order which is reviewed, except in those cases where, subsequent to that date, there may arise factors requiring a determination other than the one set forth in the order reviewed."

[6] Pursuant to Act No. 464, the orders of the Administrator adjusting the rent have prospective effect, except in those cases where by an express provision of the law the rent automatically adjusts to the amount prevailing on October 1, 1942, and except in such cases where the Administrator issues a temporary order increasing or fixing the maximum rent until the case is finally decided. The tenant is entitled to reimbursement of any amount he pays in excess of the maximum rent fixed by the final order. Section 6, par. 8 of the Reasonable Rents Act.

stitutes for those entered on December 5, 1952, and must, therefore, take effect on the latter date. Those of December 1952, were final orders increasing the rent 15 per cent, to take effect prospectively. At the time those orders were entered, the findings of fact of the Administrator warranted an increase in rent but he erroneously determined, as decided by the court of review, that the law limited that increase to a 15 per cent maximum. On the basis of the Administrator's own findings of fact, the landlord, petitioner here, was entitled to an increase in rent in the measure provided by law, and, pursuant to the judgment entered by the court of review, that measure did not have the 15 per cent maximum limit applied by the Administrator. When he entered the new orders in October 1953, correcting the error of law made in the former orders, he was actually entering the order that he should have originally entered. The fact that the orders of October 14, 1953, take effect on the date of original orders does not imply that the Administrator has readjusted the rent retroactively. The readjustment in this case was prospective, that is, the increase became effective on the rental period following December 5, 1952, the date when the increase was ordered. What the Administrator did later, by order of the trial court, was to conform his orders to the law, as it was judicially construed, decreeing the increase that the law provides without the 15 per cent limitation.[7]

It has been argued that the Reasonable Rents Act does not contemplate cases ordering reimbursement to the landlords. That is true, but this is not the case of a reimbursement such as that contemplated by law. The tenant's case would not be different. We have seen that the tenant is entitled to reimbursement (a) when by provision of law

---

[7] The decision of the court of review on questions of law is final and unappealable for the administrative agency. *Federal Comm'n* v. *Broadcasting Co.*, 309 U. S. 134, 145; *Evans* v. *Federal Communications Commission*, 113 F. 2d 166; *Jones* v. *Schenectady Boys Club, Inc.* 93 N.Y.S. 2d 764.

the rent automatically adjusts to the amount prevailing on October 1, 1942, and (b) in the cases where the Administrator issues a temporary order increasing or fixing the maximum rent until the case is finally decided.

Assuming that in this case the orders of 1952 had decreed an increase in rent exceeding 15 per cent and that in a judicial review proceeding filed by the tenants it had been decided that the law does not authorize an increase over 15 per cent, since the filing of the review proceeding does not stay the effects of the Administrator's order, the tenants would have paid a higher rent than the maximum rent from the date of the orders reviewed by the court until the date the second orders correcting the first ones were issued. If the orders entered to correct the original ones were not effective on the date the latter were issued, the tenant could not recover what he paid in excess because this is not one of the reimbursement cases contemplated by law. As a result, the landlord would unjustly withhold the rentals paid in excess by the tenants. In equity the reimbursement would be proper. The landlord deserves the same fair treatment when, as here, the contrary occurs.[8]

It is a principle of general application that one against whom an erroneous judgment or decree has been rendered and carried into effect is entitled to restitution of that which he has lost thereby. The application of this principle is to compel restitution to a person injured by the enforcement of an administrative order subsequently reversed. See 42 Am. Jur., § 250, p. 692; *Restatement of the Law, Restitution*, § 74, p. 302; *Baltimore & O. R. Co.* v. *United States*, 279 U. S. 781; *Arkadelphia Milling Co.* v. *San Luis S. W. Ry. Co.*, 249 U. S. 134; *Atlantic Coast Line R. R. Co.* v. *Florida*, 295 U. S. 301. But this rule, although general in

---

[8] Under the Federal Act (Emergency Price Control Act) this situation offered no difficulty. By provision of the Federal Regulation, the increase in these cases became effective retroactively as of the date on which the petition for an increase was filed. See § 5 of said Regulation and Friedlander and Curreri, *Rent Control*, p. 200.

its application, is not without exceptions. This is so because it is equitable in origin. If restitution of the money received under an erroneous administrative decree will give offense to equity and good conscience it must not prevail. *Atlantic Coast Line R. R. Co.* v. *Florida, supra.* In the absence of a law or regulation, the principles on which this doctrine is based must not be discarded in deciding a question like the one herein.

The interveners make an effort to convince us that equity is on their side,[9] but we cannot agree with them. For example, the fact that the interveners were not notified of the first judicial review proceeding filed by the petitioner lacks the importance attributed it by the interveners, and it does not constitute an element of equity in their favor. They could not ignore that the law grants the judicial review of the Administrator's orders and that the administrative orders are not final until expiration of the term fixed by law for the filing of such proceedings. Therefore, it was not difficult for the interveners to find out whether or not such a proceeding had been filed. Likewise, we do not believe that the other alleged principles of equity invoked by the interveners are a sufficient basis to preclude the petitioner

---

[9] The interveners invoke in their favor as elements of equity the following:

"(1) The Reasonable Rents Act did not allow them to pay any rent over that fixed by the Administrator; (2) assuming that the statute had allowed it, the interveners could have never determined it, since in our system of controlled rents the rental is exclusively fixed by the Administrator and the parties are not at liberty to enter into contracts beyond that determination; (3) petitioner himself accepted the rentals paid by the interveners under the original orders without notifying them of, and even without offering them a legal opportunity to be parties to, his petition for review of those original orders; (4) until the respondent court ordered that they be notified, the interveners had no legal notice that the petitioner intended to challenge the Administrator's determination so that the orders increasing the rent would be given retroactive effect; (5) the interveners relied on the provisions of the Reasonable Rents Act which does not permit either the lessor or the tenant to pay higher rent than that fixed by the Administrator, and which punishes said action as an offense."

from recovering in time the rentals that he was entitled to receive from the time the original orders increasing the rent were entered on December 5, 1952. The second orders entered on October 14, 1953, should have taken effect on that date and in failing to so hold the trial court erred.

We shall not stop to consider the second question raised by the petitioner on the small rent reduction ordered in cases HC–3283 and HC–3287. In his answer to the petition for certiorari the Administrator has alleged that those cases were thoroughly and sufficiently discussed during the administrative hearing and that the petitioner participated in all those proceedings. The transcript of evidence of the administrative hearing has not been sent up to this Court. Therefore, we are in no position to determine whether the question on rent reduction was discussed in the administrative hearing and whether or not the Administrator was justified in ordering the reductions.

For the foregoing reasons, the judgment appealed from will be set aside and the case remanded to the trial court to enter another judgment not inconsistent with this opinion.

Mr. Justice Negrón Fernández concurs in the result.

Mr. Justice Belaval dissented.