**B. F. DIAMOND, Trading as Diamond Construction Company, Appellant,**

v.

**THE MOTOR VESSEL FERNSIDE, her engines, boilers, etc., and A/S Glittre, Appellees.**

No. 16917.

United States Court of Appeals
Fifth Circuit.

March 5, 1958.

E. Ormonde Hunter, Malcolm Maclean, Savannah, Ga., for appellant, Connerat, Dunn, Hunter, Cubbedge & Houlihan, Savannah, Ga., of counsel.

Harold A. Mouzon, Moore & Mouzon, Charleston, S. C., for appellees.

Before HUTCHESON, Chief Judge, and JONES and BROWN, Circuit Judges.

PER CURIAM.

This is not the normal collision case with loyal and earnest adherents swearing contradictorily. A simple case coming up on a small record, with no material facts in dispute, it presents the picture of an overtaking vessel, the Motor Vessel Fernside, coming up in a narrow channel dead astern of, and running into and ramming, libellant's tug and tow.

The libel, in addition to the usual formal averments and an allegation that the Tug-tow was overtaken and rammed from astern by the Vessel, charges the Vessel with negligence, in each particular as follows:

"14. (a) In that the Fernside failed to keep out of the way of the barge which was being overtaken.

"(b) In that the Fernside was steered into the aft end of the barge.

"(c) In that the Fernside attempted to pass the barge without allowing sufficient clearance to prevent colliding therewith.

"(d) In that the Fernside, after having seen the barge in ample time and after having stopped its engines, again started up its engines without having determined upon a prudent and safe maneuver to pass the said barge with necessary clearance.

"(e) In that those in charge of the Fernside failed to keep the Vessel under immediate control while attempting to pass the said barge.

"(f) In that those in command of the Fernside negligently under-estimated the distance between the barge and the Fernside when orders were given to start the Fernside ahead again.

"(g) In that the Fernside was started ahead at an excessive and dangerous rate of speed."

The Answer, after admitting that the Vessel was the overtaking craft, charged the Tug-tow with negligence, in failing to hold a proper course, in using the wrong side of the channel, in failing to hear the Vessel's signal, and in failing to change its course.

The district judge, stating, "There is but little conflict of evidence as to what occurred on the occasion of the collision", found that the Fernside "was the overtaking vessel, required by Art. 24 of the Inland Rules to keep out of the way of the overtaken vessel, the tug and barge". He found, however, that her actions were such as to excuse her failure to obey the rule and that the collision did not result from her failure but from the violation by the tug of at least three rules of navigation. As he stated them, these were: (1) By deliberately keeping on the port side of a narrow channel, she violated

Art. 25; (2) By acceding to the Fernside's proposal to pass her to port instead of blowing a danger signal, she violated Art. 18, Rule 8; and (3) By failing to post a man where he could hear whistle signals, she violated Art. 29.

Libellant, emphasizing the importance and binding force of the universal rule of the sea, incorporated into statute law,[1] and the absolute duty it imposes upon an overtaking vessel to keep out of the way of the overtaken vessel, cites Warner Co. v. Independent Pier Co., 278 U.S. 85, 49 S.Ct. 45, 73 L.Ed. 195; The Percheron v. Alabama Transit Co., 5 Cir., 246 F.2d 135, and many similar decisions in support of his claim that the district judge misapprehended the force and effect of the evidence and, in finding and holding as he did, went contrary to the truth and right of the case.

We agree that this is so. Without setting out the evidence of Chastain, Captain of the George Bonney and of Karlsen, Captain, and Poulmot, Pilot, of the Fernside, it is sufficient to say that it establishes without dispute that there was nothing to prevent the Fernside from seeing and knowing all of the conditions and circumstances surrounding and attending her decision and her attempt to pass the Tug-tow. It also establishes that there was nothing to account for the collision except the wholly unwarranted, the inexcusable impatience and negligence of those on the Fernside, evidenced, (1) by their importunate and headstrong persistence in pressing for consent to pass on the tug's port side, and (2) by their attempting thereafter to force a passage, all, without giving sufficient consideration to the situation as a whole and particularly to

---

1. "Not withstanding anything contained in these rules every vessel, overtaking any other, shall keep out of the way of the overtaken vessel * * * and no subsequent alteration of the bearing between the two vessels shall * * * relieve her of the duty of keeping clear of the overtaken vessel until she is finally passed and clear." Navigation, 33 U.S. C.A. § 209.

"Every steam vessel which is directed by these rules to keep out of the way of another vessel shall, on approaching her, if necessary, slacken her speed or stop or reverse." Navigation, 33 U.S.C.A. § 208.

The correlative duty of the overtaken vessel is likewise plain: "Where, by any of these rules, one of the two vessels is to keep out of the way, the other shall keep her course and speed." 33 U.S.C.A. § 206.

the consequences of a failure to negotiate the passing, Cf. Seaboard Airline R. Co. v. Pan American Petroleum & Transport Co., 5 Cir., 199 F.2d 761, and on the unauthorized assumption that the tow would, or should, move out of the way.

The judgment is therefore reversed and, since the cost of the necessary repairs, $6,465, is not in dispute, here rendered in favor of libellant for that sum.