Luis Martínez, peticionario, *v.* Tribunal Superior de Puerto Rico, Sala de San Juan, Hon. A. M. Umpierre, Juez, demandado; Félix Mejías, Administrador de Estabilización Económica, interventor.

Número 2107.

*Sometido:* 8 de diciembre de 1955. *Resuelto:* 19 de junio de 1956.

454

*Rodolfo F. Aponte,* abogado del peticionario; *Juan T. Peñaga-rícano* y *Carlos Coll Carpintero,* abogados del interventor; *Fiddler, González & Nido,* abogados de los inquilinos que ocupan locales en el edificio envuelto en el recurso.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

El peticionario Luis Martínez es dueño de un edificio ubicado en la Parada 8 de Puerta de Tierra. Este edificio está dividido en locales dedicados a oficinas y almacén por varias compañías distribuidoras de películas cinematográficas, quienes son las arrendatarias de dichos locales. En junio de 1952 el arrendador Martínez radicó ante la entonces Administración de Inquilinato de Puerto Rico[1] una solicitud para que se aumentara el canon de los locales arrendados. Después de celebrarse una audiencia en la que todas las partes intervinieron, presentaron prueba, y fueron ampliamente oídas, el Administrador de Inquilinato en 5 de diciembre de 1952 dictó órdenes aumentando el alquiler en

[1] La Ley núm. 97 de 19 de junio de 1953 (pág. 351) abolió la oficina de Administración de Inquilinato y transfirió sus funciones, poderes y deberes a la Administración de Estabilización Económica para ser ejercitados por el Administrador de Estabilización Económica de acuerdo con las disposiciones de la Ley núm. 464 de 25 de abril de 1946 ((1) pág. 1327) (Ley de Alquileres Razonables).

un 15% sobre la renta básica, efectivo al período de alquiler siguiente a la orden de aumento.(²)   Las arrendatarias no impugnaron las órdenes de aumento, bien solicitando su reconsideración ante la propia agencia administrativa o mediante el recurso de revisión provisto en el art. 7 de la Ley 464.   El arrendador sin embargo no estuvo conforme con la determinación de la Administración y solicitó su revisión ante el Tribunal Superior, Sala de San Juan, caso civil número TS 52–4590.   Los inquilinos no fueron hechos parte en este recurso, ni se les notificó, ni intervinieron en el mismo.   Sin embargo, el Administrador de Inquilinato compareció ante dicho tribunal a sostener sus órdenes.   Después de celebrarse una vista el tribunal a quo dictó sentencia en 28 de agosto de 1953 dejando sin efecto las órdenes recurridas y devolviendo el caso al Administrador de Estabilización Económica "para que proceda a fijar el alquiler razonable para cada uno de los locales con vista a sus propias conclusiones".

De acuerdo con los términos de dicha sentencia el Administrador de Estabilización Económica, en 14 de octubre de 1953, dictó nuevas órdenes efectivas el día 1ro. de octubre de 1953, fijando, sin la limitación del 15%, cánones mayores a los fijados en las órdenes originales excepto en cuanto a dos casos en los que el canon fué rebajado.   Las nuevas órdenes así dictadas fueron notificadas tanto al propietario como a las arrendatarias.   Éstas tampoco impugnaron dichas órdenes ni solicitaron su revisión.   El arrendador por el contrario no estuvo conforme con la nueva determinación del Administrador en cuanto al carácter prospectivo que dió

---

(²) El Administrador de Inquilinato encontró probado que con posterioridad al 1ro. de octubre de 1942, (1) se hicieron mejoras al edificio por valor de $6,995.57; (2) hubo un aumento en consumo de agua de $31.57 mensuales; (3) hubo un aumento de $104.75 mensuales por concepto de contribuciones sobre la propiedad, y (4) que por razón de relaciones especiales entre el propietario y el inquilino y debido a circunstancias peculiares el alquiler devengado en 1ro. de octubre de 1942 era más bajo que el alquiler de comparación.   Resolvió sin embargo que la ley autorizaba solamente un aumento de 15% sobre el alquiler básico.

a las nuevas órdenes ni en cuanto a la rebaja decretada en dos casos y solicitó su revisión ante el tribunal a quo. A solicitud del propio peticionario en este segundo recurso de revisión fueron citadas y oídas las arrendatarias de todos los locales. Luego de celebrarse la vista correspondiente en dicho recurso de revisión el tribunal a quo dictó sentencia declarándolo sin lugar. Para revisar esta sentencia expedimos un auto de *certiorari* a solicitud del propietario o arrendador Luis Martínez.

En este recurso el peticionario sostiene que el tribunal a quo cometió error al declarar sin lugar su recurso de revisión (1) porque las nuevas órdenes de aumento de alquiler dictadas en 14 de octubre de 1953 debieron ser efectivas el día 5 de diciembre de 1952, fecha de las órdenes originales, y no el día 1ro. de octubre de 1953, según lo dispuso el Administrador de Estabilización Económica, y (2) porque dentro del procedimiento de aumento de alquiler solicitado por el casero no procedía la rebaja de alquileres decretada por el Administrador en los casos HC-3283 y HC-3287.

Antes de considerar estas cuestiones procede indicar que las arrendatarias, aquí interventoras, atacan en su alegato (*a*) la validez de la sentencia dictada por el tribunal a quo en el primer recurso de revisión interpuesto por el aquí peticionario así como las órdenes del Administrador basadas en dicha sentencia, aduciendo como fundamento el hecho de que ellas no fueron partes ni fueron citadas ni oídas en dicho recurso, y (*b*) la validez del segundo recurso de revisión interpuesto también por el peticionario y que es objeto del presente *certiorari*, alegando como fundamento que en dicho recurso tampoco ellas fueron partes.

Expedimos el auto de *certiorari* en este caso para revisar los errores imputados por el peticionario al tribunal a quo en el pronunciamiento de la sentencia que es ahora objeto de revisión en este Tribunal. Las interventoras no han solicitado la revisión por *certiorari* de dicha sentencia. Por lo tanto, su misión ante nos debe limitarse a sostener la corrección de

la ameritada sentencia. Si bien ellas no fueron partes demandadas o recurridas ante el tribunal a quo, no es menos cierto que fueron citadas y que comparecieron y fueron oídas en el recurso de revisión cuya validez ahora impugnan en su carácter de interventoras y no como peticionarias o recurrentes.

Generalmente este Tribunal no considerará objeciones levantadas contra las sentencias, resoluciones u órdenes de los tribunales inferiores por una parte que no ha solicitado su revisión mediante *certiorari*. *Mechanics Co. v. Culhane*, 299 U.S. 51; *Alexander v. Cosden Co.*, 290 U.S. 484; *Lloyd Sabaudo Societa v. Elting*, 287 U.S. 329; *Oxford Paper Co. v. The Nidarholm*, 282 U.S. 681; *Warner Co. v. Pier Co.*, 278 U.S. 85. Hemos seguido un principio similar en cuanto a las apelaciones. *Todd v. Asamblea Municipal*, 39 D.P.R. 7, 140. Véase además, 3 Am. Jur., pág. 402, sec. 865; *Harlan-Wallins Coal Corp. v. Jackson*, 233 S.W.2d 1014. Un cuidadoso examen del récord en este caso no revela que existen aquí circunstancias extraordinarias que nos muevan a hacer una excepción a esa regla (³)

---

(³) No nos impresiona el argumento aducido por las interventoras en el sentido de que en el procedimiento de aumento de alquiler no se ha observado el debido procedimiento de ley por razón de que ellas no fueron citadas ni oídas en el primer recurso de revisión. Si bien esto es cierto, cuando el Administrador de Estabilización Económica les notificó las nuevas órdenes de aumento de alquiler dictadas en cumplimiento de la sentencia que recayó en dicho recurso, las interventoras tuvieron una oportunidad para impugnar las referidas órdenes ante el propio Administrador o por medio de recurso de revisión judicial autorizado por la ley y no lo hicieron. A nuestro juicio consintieron dichas órdenes. Aparte de ello, en ese primer recurso el tribunal a quo se limitó a revisar el récord de los procedimientos administrativos.—*Ledesma, Admor. v. Tribunal de Distrito*, 73 D.P.R. 396—y sin alterar ninguna de las determinaciones de hecho concluyó que el Administrador había cometido un error de derecho y devolvió el caso "para que (el Administrador) proceda a fijar el alquiler razonable para cada uno de los locales *con vista a sus propias conclusiones*". (Bastardillas nuestras).

"Los requisitos del debido procedimiento de ley quedan cumplidos si en cualquier momento antes de que la actuación gubernamental sea firme se conceden vistas por acción administrativa o judicial." Davis, *The Requirement of Opportunity to be Heard in the Admn. Process*, 51 Yale

■■ La primera cuestión a resolver es la referente a la fecha de efectividad de las órdenes de aumento de alquiler dictadas por el Administrador en 14 de octubre de 1953. El peticionario sostiene que dichas órdenes deben ser efectivas el día 5 de diciembre de 1952, fecha de las órdenes originales de aumento y no el día 1ro. de octubre de 1953, según lo dispuso el Administrador y confirmó el tribunal a quo.(⁴) En apoyo de su contención invoca el art. 8 del Reglamento Procesal aprobado por el anterior Administrador de Inquilinato, y los principios generales de la doctrina de restitución.

---

L.J. 1093, 1136; *Bourjois, Inc.* v. *Chapman,* 301 U.S. 183; *Southern Ry. Co.* v. *Virginia,* 290 U.S. 190. Hemos visto que aquí se concedió una vista administrativa a los inquilinos. Por otro lado, el art. 7 de la Ley de Alquileres Razonables (17 L.P.R.A. sec. 187) concede a la *parte afectada* por una regla, reglamento, orden o determinación del Administrador, el derecho a solicitar su revisión judicial. La ley sin embargo guarda silencio en cuanto a quiénes deben ser partes recurridas o demandadas o a quiénes se debe citar y oír en el recurso de revisión ante los tribunales. La revisión de los procedimientos administrativos es un derecho puramente estatutario, Gellhorn, *Administrative Law, Cases and Comments* 1940, pág. 791, aunque la revisión de determinadas cuestiones procede aun en ausencia de disposiciones legales concediendo el remedio. *Universal Camera Corp.* v. *N.L.R.B.,* 340 U.S. 474. Véase además 42 Am. Jur. 558. Nuestra legislatura en el ejercicio legal del poder de reglamentación declaró, al aprobar la Ley de Alquileres Razonables, que el arrendamiento de edificios para negocios está revestido de interés público y que el propósito de dicha ley era establecer medidas de protección para los inquilinos. Exposición de Motivos de la Ley de Alquileres Razonables, 17 L.P.R.A. sec. 181. En vista de ello es altamente improbable que cuando un casero solicita la revisión judicial de una orden o determinación del Administrador, los intereses del inquilino no están adecuadamente protegidos mediante la representación del Administrador que comparece ante el tribunal a sostener su actuación. De todos modos la falta de notificación a las aquí interventoras en el primer recurso de revisión no privaba de jurisdicción al tribunal a quo para conocer de dicho recurso si consideramos que tal requisito no es imperativo por disposición de ley. Sin embargo la mejor práctica recomendada es que una vez radicado el recurso de revisión el tribunal ordene la citación de las partes que intervinieron en el procedimiento administrativo para que comparezcan en dicho procedimiento si así lo desean.

(⁴) El peticionario indica en su alegato que de diciembre 5 de 1952 a octubre 1ro. de 1953 ha sufrido una merma de $5,669.50 por concepto de cánones de arrendamiento dejados de percibir.

En el indicado Reglamento se establece el procedimiento para la revisión administrativa de las órdenes del Administrador. Su art. 8, inciso (f), dispone que la orden que se dicte en un procedimiento de revisión tendrá efecto retroactivo a la fecha de la orden revisada, salvo aquellos casos en que, con posterioridad a dicha fecha, han intervenido factores que requieren una determinación diferente a la contenida en la orden revisada. (5) Las interventoras sostienen que la disposición de retroactividad contenida en el citado inciso (f) es nula por ser contraria a la Ley núm. 464. Por su parte el Administrador arguye que dicha disposición hace retroactivos solamente los reembolsos que contempla la ley, que son siempre a favor del inquilino. (6) Sin embargo, no vemos la necesidad de considerar la validez y alcance de la susodicha disposición reglamentaria. En primer lugar no se trata aquí de órdenes dictadas por el Administrador en un procedimiento de revisión administrativa, en cuyo caso sí sería aplicable el inciso (f) del art. 8 del Reglamento Procesal. En segundo lugar tampoco se trata aquí de aquellas órdenes de ajuste de alquiler que por disposición de ley tienen efecto retroactivo con el consiguiente derecho del inquilino a ser reembolsado de lo que pagare en exceso. Véase escolio 6. Nada hay en la Ley 464 que nos ayude

(5) El inciso (f) del art. 8 del Reglamento Procesal, lee así:

"f. El Administrador podrá ratificar, revocar o modificar en todo o en parte, la orden anterior y podrá también dictar aquellas otras órdenes que fueren necesarias en el caso. La orden que se dicte en un procedimiento de revisión tendrá efecto retroactivo a la fecha de la orden revisada, salvo aquellos casos en que, con posterioridad a dicha fecha, han intervenido factores que requieren una determinación diferente a la contenida en la orden revisada."

(6) De acuerdo con la Ley 464, las órdenes del Administrador ajustando el alquiler tienen efecto prospectivo, salvo en los casos en que por disposición expresa de dicha ley el alquiler se ajustare automáticamente a la suma prevaleciente al primero de octubre de 1942, y salvo aquellos casos en que el Administrador dicte una orden provisional aumentando o fijando el alquiler máximo hasta que el caso se resuelva en definitiva. El inquilino tiene derecho al reembolso de lo que pagare en exceso del alquiler máximo que se fijare por la orden final. Art. 6, párrafo 8 de la Ley de Alquileres Razonables.

a resolver la cuestión que discutimos. En última instancia, ésta se reduce a determinar si en virtud de alguna doctrina en derecho o en equidad, las órdenes de 14 de octubre de 1953, deben considerarse como sustitutas de las dictadas en 5 de diciembre de 1952, y deben por tanto, ser efectivas a la fecha de éstas. Las de diciembre de 1952 eran órdenes finales aumentando el alquiler en un 15%, efectivas prospectivamente. En el momento de dictarse dichas órdenes, los hechos estimados probados por el Administrador justificaban un aumento en el alquiler, pero aquél determinó erróneamente, según así lo resolvió el tribunal de revisión, que la ley limitaba ese aumento a un máximo de 15%. A base de las propias determinaciones de hecho del Administrador, el casero, aquí peticionario, tenía derecho a que el alquiler se aumentase en la medida que dispone la ley, y conforme a la sentencia dictada por el tribunal de revisión, esa medida no tenía un límite máximo del 15% que aplicó el Administrador. Cuando éste dictó las nuevas órdenes en octubre de 1953, corrigiendo el error de derecho de que adolecían las órdenes anteriores, estaba en realidad dictando las órdenes que debió dictar originalmente. El hecho de que las órdenes de 14 de octubre de 1953 sean efectivas a la fecha de las órdenes originales, no significa que el Administrador haya reajustado el alquiler retroactivamente. El reajuste hecho en este caso fué prospectivo, o sea, el aumento se hizo efectivo al período de alquiler siguiente al 5 de diciembre de 1952, fecha de la orden de aumento. Todo lo que hizo el Administrador más tarde, por mandato del tribunal a quo, fué ajustar sus órdenes a la ley, tal y como fué interpretada judicialmente, decretando el aumento que ésta dispone sin la limitación del 15%.(7)

---

(7) La decisión de la corte de revisión sobre cuestiones de derecho es final y concluyente para la agencia administrativa. *Federal Comm'n* v. *Broadcasting Co.,* 309 U.S. 134, 145; *Evans* v. *Federal Communications Commission,* 113 F.2d 166; *Jones* v. *Schenectady Boys Club, Inc.,* 93 N.Y.S.2d 764.

Se ha argumentado que la Ley de Alquileres Razonables no contempla casos en que proceda el reembolso al casero. Esto es así, pero aquí no se trata de un reembolso de los que contempla la ley. El caso del inquilino no sería diferente. Hemos visto que el inquilino tiene derecho a reembolso (a) cuando por disposición de ley el alquiler se ajusta automáticamente a la suma prevaleciente el primero de octubre de 1942, y (b) en los casos en que el Administrador dicte una orden provisional aumentando o fijando el alquiler máximo hasta que el caso se resuelva definitivamente.

Suponiendo que en este caso las órdenes de 1952 hubieran decretado un aumento del alquiler mayor del 15% y que en un recurso de revisión judicial interpuesto por los inquilinos se hubiera resuelto que la ley no autoriza un aumento mayor del 15%, como la interposición del recurso de revisión no suspende los efectos de la orden del Administrador, los inquilinos habrían pagado desde la fecha de la orden revisada hasta la fecha de las nuevas órdenes corrigiendo aquéllas, alquileres en exceso del alquiler máximo. Si las órdenes dictadas para corregir las revisadas, no son efectivas a la fecha de estas últimas, el inquilino no podría recobrar lo pagado en exceso, por no ser éste uno de los casos de reembolso que la ley contempla. El resultado sería que el casero retendría injustamente los cánones de arrendamiento pagados en exceso por los inquilinos. En equidad procedería su reembolso. La misma justicia merece el casero, cuando ocurre, como aquí, lo contrario.[8]

Es un principio de aplicación general que aquél contra quien se ha dictado y ejecutado una sentencia o un decreto erróneo, merece ser restituído en lo que perdió bajo la sentencia o decreto erróneo. Este principio ha sido aplicado para obligar la restitución a una persona perjudicada por

---

[8] Bajo la Ley Federal (Ley de Emergencia para el Control de Precios) esta cuestión no ofrecía dificultad. Por disposición del Reglamento Federal, los aumentos en estos casos eran retroactivos a la fecha de la radicación de la solicitud de aumento por el casero. Véase sec. 5 de dicho Reglamento y Friedlander and Curreri, *Rent Control,* pág. 200.

la ejecución de una orden administrativa que subsiguientemente es revocada. Véase 42 Am. Jur., sec. 250, pág. 692; *Restatement of the Law, Restitution,* sec. 74, pág. 302; *Baltimore & O.R. Co.* v. *United States,* 279 U.S. 781; *Arkadelphia Milling Co.* v. *San Luis S.W. Ry. Co.,* 249 U.S. 134; *Atlantic Coast Line R.R. Co.* v. *Florida,* 295 U.S. 301. Esta regla, aunque general en su aplicación tiene sus excepciones. Ello es así porque la misma se funda en principios de equidad. Si la restitución de lo recibido bajo un decreto administrativo erróneo ofende la equidad o a una conciencia justa, entonces aquélla no procede. *Atlantic Coast Line R.R. Co.* v. *Florida,* supra. A falta de ley o reglamento los principios que informan esta doctrina no deben ser descartados al resolver una cuestión como la aquí envuelta.

Las interventoras hacen un esfuerzo para convencernos de que la equidad está de su parte [9] mas no podemos concurrir con ellas. Por ejemplo, el hecho de que dichas interventoras no tuvieran conocimiento del primer recurso de revisión judicial interpuesto por el peticionario no tiene la importancia que las interventoras le han querido dar ni constituye un elemento de equidad a su favor. Ellas no podían ignorar que la ley concede el recurso de revisión ju-

[9] Las interventoras señalan como elementos de equidad que le asisten, los siguientes:

"(1) La Ley de Inquilinato no les permitirá pagar canon alguno por sobre el fijado por el Administrador; (2) en el supuesto de que la Ley se los hubiera permitido, las interventoras nunca hubieran podido determinar el mismo, ya que en nuestro sistema de rentas controladas el canon se fija exclusivamente por el Administrador y las partes no están en libertad de contratar más allá de esa determinación; (3) el propio peticionario aceptó los cánones pagádosle por las interventoras bajo las órdenes originales sin que les notificara de, y más aún sin que les ofreciera una oportunidad legal de intervenir, en su recurso de revisión de dichas órdenes originales; (4) las interventoras, hasta que el Tribunal recurrido ordenó fuesen notificadas, no tuvieron aviso legal de que el peticionario se proponía atacar lo actuado por el Administrador para que se le diese efecto retroactivo a las órdenes aumentando los cánones; (5) las interventoras descansaron en las disposiciones de la Ley de Inquilinato que no permite al arrendador ni al inquilino pagar mayor renta que la fijada por el Administrador, y que castiga dicho acto como un delito."

dicial contra las órdenes del Administrador y que hasta que no transcurre el tiempo fijado por la ley para la interposición de dicho recurso las órdenes administrativas no son definitivas. No era pues difícil para las interventoras enterarse de si tal recurso había sido o no interpuesto. Igualmente no creemos que los demás supuestos elementos de equidad invocados por las interventoras sean base suficiente para impedir al peticionario recobrar en su oportunidad los cánones que tenía derecho a percibir desde que se dictaron las órdenes originales de aumento en diciembre 5 de 1952. A esta fecha debieron ser efectivas las órdenes subsiguientes dictadas el 14 de octubre de 1953 y al no resolverlo así el tribunal a quo incurrió en error.

No nos detendremos a considerar la segunda cuestión planteada por el peticionario sobre la pequeña rebaja de alquiler decretada en los casos HC-3283 y HC-3287. En su contestación a la solicitud de *certiorari* el Administrador ha alegado que dichos casos se discutieron a cabalidad y suficiencia durante la vista administrativa y que el peticionario participó en todos dichos procedimientos. La transcripción de evidencia de la vista administrativa no ha sido elevada a este Tribunal. No estamos por lo tanto en condiciones de determinar si la cuestión sobre rebaja de alquiler fué discutida en la vista administrativa y si el Administrador estuvo o no justificado en decretar las susodichas rebajas.

*Por las razones expuestas la sentencia recurrida será anulada y el caso devuelto al tribunal a quo para que en su lugar dicte otra en consonancia con los términos de esta opinión.*

El Juez Asociado Sr. Negrón Fernández concurre en el resultado.

El Juez Asociado Sr. Belaval disintió.