911 F.2d 733
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Dale SANLOR and Robert E. Golata, Plaintiffs-Appellants,
v.
Police Officer MCDERMOTT, Police Officer Bredin, and City of
Livonia (Livonia Police Department), Defendants-Appellees.
 No. 89-1938.
 United States Court of Appeals, Sixth Circuit.
 Aug. 20, 1990.
 
 Before WELLFORD and BOGGS, Circuit Judges, and DOWD*, District Judge.
 WELLFORD, Circuit Judge.
 
 
 1
 This case is another of the many civil controversies considered in federal court which are brought by parties arrested or taken into custody against the arresting authorities. Unlike a number of these cases, this one originated in state court when Dale Sanlor and Robert Golata filed a complaint in 1988 against two Livonia police officers, McDermott and Bredin, and the City of Livonia, Michigan, with respect to an incident which occurred on February 6, 1986. Defendants filed a petition for removal and the case was removed, apparently without opposition. The counts of the complaint charged: (1) a Michigan constitutional due process violation and one for alleged search and seizure; (2) assault and battery; (3) false arrest and imprisonment; (4) intentional infliction of emotional distress; (5) a violation of 42 U.S.C. Sec. 1983 based on fourth, fifth and sixth amendment violations; and (6) malicious prosecution. The only basis for removal was the federal question presented by the 42 U.S.C. Sec. 1983 claim.[1]
 
 
 2
 Defendants answered in some detail and asserted a number of affirmative defenses including failure to state a cause of action, governmental immunity, good faith in the performance of discretionary activities, qualified immunity, and contributory negligence. Livonia based its motion on three cases: Monell v. New York City Department of Social Servs., 436 U.S. 658 (1978); Ross v. Consumers Power, 420 Mich. 567, 363 N.W.2d 641 (1984); and Smith v. State, Dept. of Public Health, 428 Mich. 540, 410 N.W.2d 749 (1987). The individual defendants then moved for summary judgment, supported by an affidavit of defendants' counsel addressing immunity, the 42 U.S.C. Sec. 1983 claims, and the claims of assault and battery and false arrest.[2] Livonia filed a motion for partial summary judgment based on governmental immunity as to the state law claims and plaintiffs' failure to state "a federal cause of action." The district court entered summary judgment for defendants, after depositions of plaintiffs were taken, and denied a motion for reconsideration. Plaintiffs have appealed.
 
 
 3
 In respect to motions for summary judgment, "inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). The court must determine whether there is a genuine issue of material fact to be tried by the trier of fact. Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).
 
 Rule 56(e) provides, in relevant part:
 
 4
 When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.
 
 
 5
 Fed.R.Civ.P. 56(e). The Supreme Court has clarified the meaning of Rule 56:
 
 
 6
 [T]he issue of fact must be "genuine." Fed.Rules Civ.Proc. 56(c), (e). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. See DeLuca v. Atlantic Refining Co., 176 F.2d 421, 423 (CA2 1949) (L. Hand, J.), cert. denied, 338 U.S. 943 (1950); 10A C. Wright, A.Miller, & M. Kane, Federal Practice and Procedure Sec. 2727 (1983); Clark, Special Problems in Drafting and Interpreting Procedural Codes and Rules, 3 Vand. L.Rev. 493, 504-505 (1950). Cf. Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed.Rule Civ.Proc. 56(e) (emphasis added). See also Advisory Committee Note to 1963 Amendment of Fed.Rule Civ.Proc. 56(e), 28 U.S.C.App., p. 626 (purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial"). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."
 
 
 7
 Matsushita Elec., 475 U.S. at 586-87 (citation omitted) (footnote omitted) (emphasis in original).
 
 
 8
 In this case, plaintiffs filed the following response to the defendant City's partial summary judgment motion on May 31, 1988:
 
 
 9
 1. That the Plaintiff has properly pled pursuant to the Michigan Constitution against the Defendant City of Livonia so that immunity is not a defense pursuant to Smith v. Department of Public Health, 428 Mich.App. 540, 410 N.W.2d 749 (1987).
 
 
 10
 2. That whether or not the Defendant Police Officers were acting pursuant to department policy which would render the City of Livonia liable pursuant to Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018 (1978) is a question of fact pending further discovery.
 
 
 11
 Joint Appendix 40-41.
 
 
 12
 In sum, plaintiffs responded that Smith established that "a cause of action would exist [under the Michigan Constitution] if there was [sic] a violation by virtue of custom or policy" based on something other than "respondeat superior." Specifically, plaintiffs argued that Smith adopted the principle of Monell that a municipality could be held liable for a police officer's action if based upon "some policy or custom of the governmental unit."[3] In that respect, plaintiffs maintained that "discovery should be allowed to determine" whether plaintiffs could make this showing.
 
 
 13
 Plaintiffs responded to the individual defendants' motion for summary judgment on July 21, 1988, stating:
 
 
 14
 The plaintiffs have alleged counts of assault and battery, false arrest and imprisonment, malicious prosecution and deprivation of constitutional rights. The plaintiffs have stated cognizable claims under these theories and should proceed to discovery. Inasmuch as defendants' motion tests the complaint on its face, plaintiffs relies [sic] upon the statement of facts as stated in the complaint, or any necessary amendment thereto as the court may find.
 
 
 15
 Joint Appendix 64-65.
 
 
 16
 We must apply the following standard in police misconduct cases:
 
 
 17
 When government officials abuse their offices, "action[s] for damages may offer the only realistic avenue for vindication of constitutional guarantees." On the other hand, permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties. Our cases have accommodated these conflicting concerns by generally providing government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. Somewhat more concretely, whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, assessed in light of the legal rules that were "clearly established" at the time it was taken,....
 
 
 18
 Anderson v. Creighton, 483 U.S. 635, 638-39 (1987) (citations omitted). Harlow v. Fitzgerald, 457 U.S. 800 (1982), earlier established this standard of objective reasonableness.
 
 
 19
 On January 10, 1989, the district court entered summary judgment for defendants in a brief order citing only Ross, Monell, and Celotex. The district court observed that "despite ... full discovery ... in response to the motions, the Plaintiffs have not cited nor offered any basis for their claims." The judgment was entered without any opportunity for oral argument.
 
 
 20
 Plaintiffs claim that the only facts before the court were set out in depositions of both plaintiffs. A part of the joint appendix, however, reflects an exhibit and response to plaintiffs' request for production of documents made by defendants which included reports compiled by defendant police officer McDermott on February 6, 1986, of the incident in question, and a February 21, 1986 "request for warrant" as to Golata, Sanlor, and Utting, the third party involved.[4] This material reflects that cases against Golata and Sanlor for loitering were dismissed on September 23, 1988, by state judge Brzezinski. The record also includes Miranda warning acknowledgements signed by Golata and Sanlor and brief statements made after custodial interrogation.
 
 
 21
 Plaintiffs were UPS employees who had been at the Derby Bar in a shopping center lot in Livonia since about 6:00 p.m. while "sitting in the back seat of a van with two other UPS employees in the front." Plaintiffs alleged that:
 
 
 22
 While they were sitting in the back sit [sic] of the van, a police officer approached and asked the occupants to exit. After the police officer searched the inside of the van, the Plaintiffs were then arrested and handcuffed. The Plaintiffs were then informed that they were being arrested for possession of cocaine, even though they had no cocaine in their possession nor saw any evidence of any cocaine.
 
 
 23
 .............................................................
 
 
 24
 ...................
 
 
 25
 * * *
 
 
 26
 Once at the station, they were booked and interviewed. After approximately one and one half (1 1/2) hours, the Plaintiffs were released without charges. Approximately four to five weeks later, the Plaintiffs both received notices in the mail that they were being charged with loitering in a place of illegal business.... The only possible basis that the Plaintiffs were ever informed of for their arrest was that a bowling bag allegedly containing drugs was found in the rear of the van behind the passenger compartment.
 
 
 27
 Plaintiffs' Brief at 4-5.
 
 
 28
 There is no showing by plaintiffs that the episode in question was based on any known or settled policy or custom or any actual involvement in this episode by city policy makers or principals on the Livonia police force. There is, therefore, no basis for the action under 42 U.S.C. Sec. 1983 against the City of Livonia.[5] Accordingly, the City was properly dismissed as a defendant, and plaintiffs' counsel made no argument to the contrary in his brief or in oral argument. We also find that there was no cause of action against the City under the Michigan Constitution by virtue of any "unarticulated" custom or policy.
 
 
 29
 We are left, then, with consideration as to whether the grant of summary judgment was appropriate as to the individual police officer defendants. There seems to be no question but that plaintiffs had been in a bar and then in a van in a parking area of a shopping center drinking beer for some three and a half hours before being asked to remove themselves from the van by defendant McDermott. Both defendants' actions were described in the complaint as
 
 
 30
 committed while the individual defendants were within the apparent scope of employment for the defendant City of Livonia and committed under the cloak of authority created by their position as police officers. However, said actions were not in furtherance of a governmental function and were ultra vires....
 
 
 31
 Joint Appendix at 7.
 
 
 32
 It is apparent that the district court took into account the attachments to plaintiffs' motion for production of documents in reaching its decision. The reports of the police officers were unsworn. The van, owned by a third party who was sitting in the driver's seat, contained open and "partially consumed" bottles of beer, and a container in which suspected cocaine was located. Sanlor was purportedly observed while drinking beer, and a white powdery substance "across the center of the console" was seen in the van interior. The reporting officer also observed what he believed, based on experience, was a "cocaine kit" in the car. Some suspected cocaine was observed in the back seat next to plaintiffs. One of the other van occupants allegedly admitted doing cocaine that night and claimed that the cocaine kit had been placed in the car by accident. The officer reported that the owner-driver of the van was on probation for possession of narcotics paraphernalia and that Golata had evidence of or a trace indication of suspected cocaine in his wallet.
 
 
 33
 The question, it seems to us, is whether it was appropriate to consider this discovered material as part of the record in evaluating the action of the district court. Plaintiffs complain in their brief that they "were never told of any basis or evidentiary support for the arrest." Plaintiffs' Brief at 5.
 
 
 34
 One authority indicates that the moving party may support the summary judgment motion "with some affidavits or other materials showing or at least suggesting the nonexistence of an essential element in the opposing party's case." Louis, Federal Judgment Doctrine: A Critical Analysis, 83 Yale L.J. 745, 749 (1974) (emphasis added).[6] It would appear that defendants did support their motion with "other materials" in this case--the police reports, which would tend to indicate that the officers acted reasonably because of the implications of drug activity potentially involving plaintiffs at the scene.
 
 
 35
 Defendants assert in their brief that "Plaintiffs never filed the Deposition testimony as part of the District Court record." Defendants' Brief at 4. The district court noted in its order that "there is nothing in the record to support the Plaintiffs' claims," indicating no consideration of the depositions in question. After the district court granted summary judgment, Sanlor and Goleta moved the court to rehear or redetermine its holding asserting that they had, in fact, produced the depositions prior to the entry of judgment.
 
 
 36
 The plaintiffs' motion is not a model of clarity, but we believe that it may be construed to be a timely effort to raise Fed.R.Civ.P. 60(b) grounds for relief from the judgment entered against plaintiffs. The decision of the district court to deny the motion "for rehearing, redetermination and/or clarification" was based upon a local rule of the district court which deals with "motions for rehearing or reconsideration." See Rule 17(m)(3) of the Eastern District of Michigan.
 
 
 37
 We cannot fault the district court with respect to the failure of the plaintiffs to particularize the basis for their opposition to defendants' summary judgment motions. At the same time, it was not clear to plaintiffs' counsel that defendants had submitted evidence in the form of police reports to support its position relying on answers or responses to plaintiffs' motion for production of documents. This case evidences the problems that may arise from a district court's practice of making a dispositive ruling in a case based on defendants' summary judgment motion and plaintiffs' response without ever affording the parties an opportunity for oral argument. We do not look favorably upon this practice, because, among other reasons, oral argument may clarify the parties' perceptions about the status of the record before the court and may afford the court a further opportunity to understand fully the position of the parties.
 
 
 38
 Under the circumstances, we do not take occasion to rule on the validity of the judgment upon the motions for summary judgment made by the police officers. Rather, in the interest of justice, we treat plaintiffs' motion to reconsider as a Rule 60(b) motion for relief from the judgment entered for defendants. That Rule of Civil Procedure would then apply, and the district court should have the opportunity at a hearing to consider whether plaintiffs have made out a case for such relief. Each party would then have the opportunity to address the issues to the district court that have been presented here on appeal and to bring to the district court's attention in a proper fashion the depositions taken, the police reports, and any other evidence deemed appropriate to the Rule 60(b) proceeding which may bear ultimately upon the merits of the 42 U.S.C. Sec. 1983 claim in this case.
 
 
 39
 We, therefore, REMAND this case to the district court to consider whether plaintiffs' January 20, 1989 motion, treated as a Rule 60(b) motion, has merit.
 
 
 40
 We AFFIRM the judgment for the City of Livonia, and we REMAND for further consideration plaintiffs' post-judgment motion for relief as to defendant police officers in accordance with this opinion.
 
 
 
 *
 THE HONORABLE DAVID D. DOWD, JR., Judge, United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 A 42 U.S.C. Sec. 1983 claim may also be heard by a state court. Maine v. Thiboutot, 448 U.S. 1, 10-11 (1980) (citing Martinez v. California, 444 U.S. 277, 283-84 n. 7 (1980))
 
 
 [2]
 After the motions for summary judgment were filed, the parties followed the procedures provided by the Local Rules of the United States District Court for the Eastern District of Michigan, and a mediation panel recommended a $20,000 award for plaintiffs
 
 
 [3]
 In the complaint, however, plaintiffs alleged that "the wrongful conduct was pursuant to unarticulated policies and customs of the City ..." (emphasis added). It is hard to see how the City could be held liable for any unexpressed policy
 
 
 [4]
 This document also included "details of investigation" of the incident
 
 
 [5]
 Even if the City of Livonia ordinance for illegal loitering were deemed unconstitutional for vagueness, this would give no basis for a cause of action against the City under Sec. 1983 based on this factor alone. See Richardson v. City of South Euclid, No. 89-3056 (6th Cir. July 11, 1990)
 
 
 [6]
 This language was also cited in Plaintiffs' Brief at 9